393 F.2d 41
 Lorraine V. RAMSEY, personal representative of the Estate of William T. Ramsey, Deceased, Plaintiff-Appellee,
v.
COMPLETE AUTO TRANSIT, INC., a Michigan corporation, and Bernard A. Vosholler, Defendants-Appellants.
A & H TRUCK LINE, INC., an Indiana corporation, Plaintiff-Appellee,
v.
COMPLETE AUTO TRANSIT, INC., a Michigan corporation, and Bernard A. Vosholler, Defendants-Appellants.
 No. 16295.
 No. 16296.
 United States Court of Appeals Seventh Circuit.
 March 4, 1968.
 
 Gaylon L. Clark, Jr., William E. Statham, Evansville, Ind., for appellants.
 John L. Carroll, Edwin W. Johnson, Charles C. Griffith, Evansville, Ind., Johnson & Carroll, Evansville, Ind., of counsel, for appellees.
 Before HASTINGS, Chief Judge, MAJOR, Senior Circuit Judge and SCHNACKENBERG, Circuit Judge.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 In case No. 16295, Complete Auto Transit, Inc., a Michigan corporation, and Bernard A. Vosholler, defendants, have appealed to this court from a final judgment for $70,000 entered by the district court on February 16, 1967, following a trial by jury, in favor of Lorraine V. Ramsey, personal representative of the estate of William T. Ramsey, deceased, plaintiff-appellee, and against said appellants, as defendants therein.
 
 
 2
 In case No. 16296, the same appellants have appealed from a judgment of the district court in the amount of $10,774.13, entered February 16, 1967, following the same trial, in favor of A & H Truck Line, Inc., an Indiana corporation, plaintiff, and against said appellants as defendants.
 
 
 3
 In this court the appeals were consolidated for all purposes.
 
 
 4
 In No. 16295, the action by plaintiff was to recover damages for the death of William T. Ramsey caused by a collision between two trailer units, while the action by plaintiff A & H Truck Line, Inc., in No. 16296, was for damages to its tractor which was being driven by the decedent.
 
 
 5
 On April 29, 1966 at 10:20 A.M., defendant Vosholler was driving an auto-trailer unit for Complete Auto Transit, Inc.[1] in a westerly direction on state highway 56 about 2½ miles east of Haysville, Indiana, and decedent was driving a tractor-trailer unit of plaintiff A & H Truck Line, Inc.[2] in an easterly direction on said highway. It had been raining and the asphalt surface of the roadway was wet and slick. Vosholler had never before driven on this road. The description of the circumstances of the collision which occurred, as interpreted by counsel for the respective parties, we now set forth.
 
 
 6
 This is the version of plaintiff's counsel:
 
 
 7
 "As the Ramsey vehicle went into the left-hand curve, his trailer at all times remained on its own side of the center line.
 
 
 8
 "As the defendant's vehicle came into the same curve going in the opposite direction the cab of the Vosholler vehicle was on its own side of the center line when it passed the cab of the Ramsey vehicle which was then on its own side of the center line of the highway. Immediately after the cabs of the two vehicles passed each other on the curve the rear portion of the auto-trailer came into contact with the cab of the Ramsey vehicle tearing away the left front of the cab and throwing Ramsey out of the cab, killing him. * *
 
 
 9
 "On the Ramsey side of the pavement of the highway at or near the point of impact there was a gouge mark in the pavement — U-shaped or horse-shoe-shaped — 3 feet 9 inches to the right of the center line on Ramsey's side. This gouge mark pointed to a point off to the right side of the roadway where the Ramsey vehicle came to rest in an embankment. There was also another gouge mark at the right edge of the pavement on Ramsey's side directly in a line between the U-shaped mark and the point where the Ramsey vehicle came to rest. The gouge marks are shown in the state police photos made before the vehicles were moved."
 
 
 10
 The following statement indicates how the version of defendants' counsel amplifies the foregoing version:
 
 
 11
 "Upon meeting on a curve, the tractors of the units passed safely, but thereafter the left front of the A & H tractor and the left rear side of the C.A.T. trailer collided.
 
 
 12
 * * * * * *
 
 
 13
 The curve on which the accident occurred has a radius of 383 feet; and has `super elevation', or is banked, so that a vehicle traveling in the inner lane of the curve, the west bound lane, is on the low side of the bank, the north edge of the curve being approximately 22 inches lower than the south edge."
 
 
 14
 It being conceded that there were no eye witnesses to the collision, both sides felt it necessary to introduce expert testimony in the district court. Thus witnesses, described by the lawyers herein as "reconstruction experts", testified. For instance, Loren Ayres was called by plaintiff,[3] but no objection was made by defense counsel to his qualifications and it is too late in this court for such an attack.
 
 
 15
 Defendants contend that the district court erred in overruling their objections to the following hypothetical question put to Ayres on direct examination by the attorney for plaintiff Ramsey:
 
 
 16
 "Now, Mr. Ayres, from your examination of the scene, your examination of both vehicles, from the police photgraphs, and assuming that the Auto Transit auto carrier was going in a westerly direction before the collision and the A & H tractor-trailer unit was going in an easterly direction before the collision, and at the time it was raining and the pavement was wet, and assume further that at the time the two tractors of the two units had met each was on its own right-hand side of the center line of the road, and further that at the moment of impact the A & H trailer was six to eight inches over on its own right-hand side of the center line of the road, and at the moment of impact the tractor of the Complete Auto carrier unit was on its own right-hand side of the center line, and assume further that immediately after the impact the trailer of the auto carrier was thrown to the right, and assume further that the auto carrier was running empty and the A & H tractor-trailer was running loaded with a total weight of between 65,000 and 70,000 pounds: Do you have an opinion, based upon the above facts, as to the point of impact of these two vehicles and their relative position with reference to the center line of the road?"
 
 
 17
 First, defendants say that the question failed to take into account the testimony as to the speed of both vehicles. However, as plaintiff's counsel point out, the question was concerned with the point of impact of the vehicles and did consider therefore their relative positions with reference to the center line of the road and their speed. Moreover, Indiana law does not require all facts to be included in a hypothetical question, but only those facts required to form the basis of an opinion. In Davidson v. State, 135 Ind. 254, 261, 34 N.E. 972, 974 (1893), the court said:
 
 
 18
 "In the examination of expert witnesses, counsel may embrace in his hypothetical question, such facts as he may deem established by the evidence, and if opposing counsel does not think all the facts established are included in such question, he may include them in questions propounded on cross-examination. Any other course would result in endless wrangles over the question as to what the facts were and what were not established."
 
 
 19
 Moreover defendants further, for the first time, on appeal assert that this question to Ayers misstated the evidence by having a witness assume that the A & H trailer was 6-8" over on its own right-hand side of the center line of the road, whereas witness Benefiel testified the trailer was 4-6" to the right of the center line. Inasmuch as no objection to the question was made on that ground when the question was propounded at the trial, nor on a motion for a new trial, we must consider it as waived. Hawkins v. Missouri Pac. Ry., 8 Cir., 188 F.2d 348 (1951). If the question was in error in the respect noted, on cross-examination by defendants' counsel the error could have been seasonably corrected.
 
 
 20
 The differences existing between the respective versions of counsel for each of the parties, which we have set out in this opinion, indicate that the important question for decision in this case was one of fact. The verdict of the jury is supported by evidence in the record and we will not disturb that verdict nor the action of the district court based thereon. We have found no error which would justify any other action on our part. The judgments from which the appeals were taken are affirmed.
 
 
 21
 Judgments affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hereinafter referred to as C.A.T
 
 
 [2]
 Herein referred to as A & H
 
 
 [3]
 If defendants had timely challenged the status of witness Ayres to testify as an expert, the law of Indiana would have justified the district court in overruling the challenge. In Isenhour v. State, 157 Ind. 517, 62 N.E. 40 (1901), the Supreme Court of Indiana said, in 62 N.E. 40, at 44:
 "* * * Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule in such cases, in this state, at least, seems to be that, where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of sound discretion, the right to say when such knowledge is shown, and to the jury the right to say what the opinion is worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused. * * *"